IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SPENCER WEDDLE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No.: 4:11-cv-017 |
| | § | |
| SAFETY-KLEEN SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND RULING ON OTHER MOTIONS

Pending before the court are:

• Defendant's "Motion for Summary Judgment" (Dkt. #30), Plaintiffs' response (Dkt. #69), Defendant's reply (Dkt. #74), and Plaintiffs' sur-reply (Dkt. #77);

• Plaintiffs' "Motion for Two-Week Extension Deadline to Respond to Defendant's Motion for Summary Judgment" (Dkt. #60), Defendant's response (Dkt. #61), Plaintiffs' reply (Dkt. #62), and Defendant's sur-reply (Dkt. #63);

• Defendant's "Motion to Strike Plaintiffs' Untimely Summary Judgment Response" (Dkt. #71), Plaintiffs' response (Dkt. #72), Defendant's reply (Dkt. #75), and Plaintiffs' sur-reply (Dkt. #76); and

• Defendant's "Motion to Strike Portions of Plaintiffs' Summary Judgment Response Evidence" (Dkt. #73), Plaintiffs' response (Dkt. #78), Defendant's reply (Dkt. #79), and Plaintiffs' sur-reply (Dkt. #81).

Having considered Defendant's motion, the responsive briefing, and relevant legal principles, the

court is of the opinion that Defendant's motion for summary judgment should be **DENIED**.

## I. BACKGROUND

This is an age discrimination case.  The facts of this case are contested.  The uncontested

facts are limited.  Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen" or "Defendant") is a

provider of environmental services, oil re-refining, and responsible cleaning solutions.  *See* Def.'s Mot. for Summ. J. 3.  Safety-Kleen develops innovative equipment for specialized cleaning needs, and owns and operates a re-refinery of used oil.  *Id*.  In order to transfer materials and equipment between branches and customers, Safety-Kleen owns and operates twenty-one non-branch facilities that employ over-the-road ("OTR") drivers to transport the materials.  *Id*.  Plaintiffs Spencer Weddle, James Farley, Gary Phillips, Michael Grimes, and Brian Bull (collectively, "Plaintiffs"), all males over forty years old, were employed by Safety-Kleen as OTR drivers in two of Safety-Kleen's non-branch facilities.  Plaintiffs Weddle and Farley were employed at Safety-Kleen's Denton Distribution Center ("Denton DC").  Plaintiffs Phillips, Grimes, and Bull were employed at Safety-Kleen's Denton Recycle Center ("Denton RC").  *See id.* at 6.  All OTR drivers are subject to both Safety-Kleen's company policies, as well as the Federal Motor Carrier Safety Act and the Department of Transportation ("DOT") Hours of Service Regulations ("HOS Regulations").  *Id*. at 3.

Pursuant to DOT HOS Regulations, drivers must abide by certain limitations concerning the amount of time they can be driving or performing "on-duty" tasks.  One such regulation requires that drivers cease driving after 70 "on-duty" hours in an eight-day period.  "On-duty" time includes driving, loading and unloading the truck, fuel stops, and DOT inspection stops.  *Id*. at 5.  "Off-duty" time is time that the driver is relieved of all responsibilities regarding the truck and the route. *Id. See also* 49 C.F.R. § 395 *et seq*.  Safety-Kleen provided at least some DOT HOS Regulations training for its OTR drivers, though the extent of the training is disputed.  *Id*. at 8.  All Safety-Kleen OTR drivers were required to log their on-duty and off-duty time in both their drivers' log books for DOT purposes, and in their company pay sheets for payment purposes.  To properly abide by DOT HOS Regulations, drivers' logs and pay sheets must match each other and must accurately reflect on-duty

and off-duty time.  The parties contest, however, whether Plaintiffs were specifically instructed that their pay sheets and drivers' logs must match each other, and whether Safety-Kleen's training on this point was adequate.  *Compare* Def.'s Mot. for Summ. J. 5–6, 8–9, 12, *with* Dkt. #69-6, at 7.

During the summer and fall of 2009, Plaintiffs expressed concerns to their respective facility supervisors about making certain driving "runs" while abiding by the 70-hour DOT HOS Regulation. *See* Def.'s Mot. for Summ. J. 9, 12; Dkt. #69-8, at 8; Dkt. #69-9, at 7.  Plaintiffs employed at Safety-Kleen's Denton RC ("Denton RC Plaintiffs") were required to make round-trip "runs" to and from Fredonia, Kansas three times per week—or per five working days. *See* Def.'s Mot. for Summ. J. 9. However, due to a temporary shut down of the plant in Fredonia on Fridays and Thursday afternoons, the Denton RC Plaintiffs' three runs were compressed to four days, which caused them to be concerned about whether they would be able to accomplish their three runs without violating DOT HOS Regulations. *Id*.  Denton RC Plaintiffs contend that, in response to their expressed concern, their supervisor Robert Sorenson instructed them to do what they needed to do to "get the job done" and "make it look good." *Id*.  Sorenson and the Defendant, however, contest whether Sorenson gave this instruction. *Id*.  Denton RC Plaintiffs interpreted this alleged statement as an instruction to log loading and unloading time as off-duty time in their drivers' log books, yet to include it as paid time in their company pay sheets.  Accordingly, they falsified their drivers' log books.

Plaintiffs employed at Safety-Kleen's Denton DC ("Denton DC Plaintiffs") were assigned to "run" one of thirteen different routes, depending on their assignment of the week. One of the routes was to and from Boise, Idaho. *Id*. at 12.  Denton DC Plaintiffs informed their supervisor Johnny Renfro that they had concerns about their ability to complete the Boise run within the 70-hour DOT HOS Regulation, given the distance. *Id*. at 12; Dkt. #69-8, at 8.  Plaintiffs allege that

Renfro instructed them to "do what you've got to do" to get the job done. Def.'s Mot. for Summ. J. 12; Dkt. #69-8, at 8.   While Defendant contests whether Renfro gave this instruction, Renfro's deposition testimony does not contest this fact. *See* Dkt. #69-8, at 8.   Accordingly, Denton DC Plaintiffs also falsified their drivers' logs by logging loading and unloading time as off-duty hours rather than on-duty hours. Def.'s Mot. for Summ. J. 12.

In November 2009, supervisors Sorenson and Renfro sent email memos to the Denton RC and the Denton DC drivers informing them that, "effective immediately," any time that drivers wish to be paid must be logged as on-duty hours, and that drivers will not be paid for any time logged as off-duty work. *See* Dkt. #69-8, at 28; Dkt. #69-9, at 37.   Plaintiffs allege that, following receipt of this memo from their respective supervisors, they adjusted their method of logging their on-duty and off-duty time to properly match their pay sheets to their drivers' logs.

In January 2010, Defendant conducted a full audit of all drivers' logs and pay sheets for 99 drivers in its 21 non-branch facilities.  Def.'s Mot. for Summ. J. 14.  Upon receiving the results of this audit, Safety-Kleen created a "disciplinary matrix" to determine the appropriate discipline for each driver with discrepancies in his pay sheet and driver log. *Id*. at 15.  The objective nature of this disciplinary matrix is contested. *Compare id.* at 15–16, *with* Pls.'s Resp. 9–10.  Upon discovery of a driver's discrepancies, Safety-Kleen conducted an interview with that driver and, upon completion of the interview, made the final decision whether to retain, suspend, or terminate the driver.  Def.'s Mot. for Summ. J. 16–17.   Safety-Kleen alleges that each driver with discrepancies who satisfactorily explained those discrepancies was not terminated from employment.  Yet, following each Plaintiff's interview regarding his discrepancies, he was terminated. *Id*. at 18–19.

Plaintiffs Weddle and Farley were terminated on January 19, 2010.  Plaintiffs Bull, Grimes,

-4-

and Phillips were terminated on February 15, 2010.  Though the facts are contested, Plaintiffs contend that other drivers younger than forty years old remained employed though they had discrepancies.  Plaintiffs also allege that they were replaced by new, substantially younger drivers. Accordingly, after timely exhausting their administrative remedies, Plaintiffs filed their original complaint in this court on January 12, 2011. Compl. 6, ¶¶ 30–31.  Plaintiffs allege that they were unlawfully terminated due to their age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, and in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001, *et seq.*  Plaintiffs also claim that they have suffered damages, including lost past and future wages, the value of fringe benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.  Plaintiffs further allege that Defendant's actions were intentional, malicious, and committed with reckless indifference to Plaintiffs' rights, entitling Plaintiffs to both compensatory and punitive damages.  Plaintiffs also request reasonable attorneys' fees and costs.  On March 8, 2012, Defendant filed its motion for summary judgment in this case.

## II. MOTIONS REGARDING PLAINTIFFS' UNTIMELY RESPONSE

Defendant filed its motion for summary judgment on March 8, 2012.  On March 13, 2012, Plaintiffs filed their motion for a two-week extension of the deadline to respond to Defendant's motion.  The original deadline for Plaintiffs' response was March 26, 2012, and their motion sought to extend that deadline to April 9, 2012.  At 5:54 p.m. on April 9, 2012, Plaintiffs filed their response (Dkt. #69).  Plaintiffs' reasons for the requested extension are: (1) the large size of Defendant's appendix to its motion, which is 1,847 pages, (2) lead counsel's previously-scheduled, week-long family vacation during the response time, and (3) scheduling conflicts of counsel.  Further, Plaintiffs

allege that, upon conferring with defense counsel, Defendant did not oppose a one-week extension but opposed a two-week extension.  In response, Defendant opposes the motion and requests that the court strike Plaintiffs' untimely response.  Defendant argues that it agreed to a seven-day extension due to counsel's week-long family vacation, but did not agree to a 14-day extension because Plaintiffs' assistant counsel could also work on the response, and Plaintiffs had been aware of the court's deadline for many months.  Defendant also argues that Plaintiffs' alleged conflicts were either moot or arose after the court's summary judgment deadline in this case. *See* Dkt. #61.

The court notes that Plaintiffs filed their motion for an extension well before the response deadline, and were thorough and forthcoming with the court regarding their conflicts.  Accordingly, the court will allow the extension and will not strike Plaintiffs' response.  Plaintiffs' motion for a two-week extension (Dkt. #60) is **GRANTED** and Defendant's motion to strike (Dkt. #71) is **DENIED**.

### III.  OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

The Defendant filed a motion to strike portions of the Plaintiffs' summary judgment evidence (Dkt. #73), objecting primarily to portions of the Plaintiffs' declarations as well as Plaintiffs' counsel's declaration.   Specifically, the Defendant argues that portions of Plaintiffs' declarations are speculative, not based on personal knowledge, misleading, irrelevant, and contradict prior deposition testimony.  To the extent Defendant objects to portions of the testimony being misleading, speculative, or irrelevant, the court recognizes that "[u]nsubstantiated assertions are not competent summary judgment evidence." *Hugh Symons Grp., PLC v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).  Having considered this objection with respect to the Plaintiffs' declarations, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment

and evidentiary standards. *See* FED. R. CIV. P. 56(c)(4).

With respect to Defendant's objections to the portions of Plaintiffs' declarations that allegedly contradict their prior deposition testimony, the cases cited by Defendant "have required an explanation of [a] conflict" where an affidavit is "the sole evidence purporting to create a genuine issue of material fact," yet "conflicts with deposition testimony." *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002) (striking an affidavit that came "at the eleventh hour" and was "basically self-serving [and] . . . not supported by [the affiant's] own sworn testimony" (internal quotations omitted)).   Here, the court does not require an explanation of the conflicts that Defendant alleges.   First, Plaintiffs' declarations are not their only evidence creating a genuine issue of material fact. *See* Dkt. #69 and Appendix.   Second, the court is not convinced that their declarations are in direct conflict with their prior deposition testimony when viewing these facts in the light most favorable to the Plaintiffs, the non-moving party.   However, even if there are some inconsistencies between the declarations and the depositions, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

Finally, Defendant also objects to Plaintiffs' counsel Joseph Gillespie's business declaration, which is used to authenticate documents and audio recordings of the Texas Workforce Commission ("TWC") Final Appeal Decisions on Plaintiffs' individual claims for benefits.   For the purposes of this litigation, the findings of the TWC are inadmissible. TEX. LABOR CODE ANN. § 213.007; *Williams v. City of Dallas*, 273 F.3d 393, 393 (5th Cir. 2001) (per curiam); *McFadden v. Seagoville State Bank*, 2009 WL 37596, *3 (N.D. Tex. Jan. 6, 2009).   However, testimony before the Texas

Workforce Commission is proper summary judgment evidence. *See Govea v. Landmark Indus., Ltd.*, 2011 WL 632858, at *2 n.36 (W.D. Tex. Feb. 10, 2011); *Rhodes v. Curascript, Inc.*, 2008 WL 4449905, at *1–2 (S.D. Tex. Sept. 20, 2008).   Accordingly, the findings of the TWC are **STRICKEN**, but the official recordings of testimony before the TWC are not stricken and are proper summary judgment evidence.

## IV.  MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted).  The substantive law identifies which facts are material.  *See id.* at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24.  First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof.  The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings."  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "Conclusional

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745, *1 (5th Cir. 2012) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## B. DISCUSSION & ANALYSIS[1]

"Under the ADEA [Age Discrimination in Employment Act], it is unlawful for an employer to discharge an employee 'because of such individual's age.'" *Cervantez v. KMGP Services Company, Inc.*, 2009 WL 2957297, *8 (5th Cir. 2009). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'" *Id.* (citation omitted). Here, the Plaintiffs rely on circumstantial evidence; accordingly, "the burden-shifting framework of *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973)] applies." *Id.* (citations omitted). "Under this standard, the employee must first establish a prima facie case of discrimination." *Id.* (citation omitted). A prima facie case requires that the employee prove that he (1) belongs to the protected group of persons over the age of forty; (2) was qualified for his position; (3) was discharged; and (4) was replaced with someone younger or outside the protected group or otherwise discharged because of his age. *Id.* (citation omitted); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (citations omitted).

---

[1]Here, the Plaintiffs seek redress for their age discrimination claim under federal law and state law. "In enacting the TCHRA [Texas Commission on Human Rights Act], the Texas legislature intended to correlate state law with federal law in employment discrimination cases." *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 791 (S.D. Tex. 2004), citing TEX. LABOR CODE ANN. § 21.001 (Vernon 1996) (remaining citation omitted). "Accordingly, in employment discrimination cases, courts employ the burden-shifting analysis established by the United States Supreme Court." *Id.* (citations omitted).

"The burden then shifts to the employer to produce evidence that the employee was discharged 'for a legitimate, nondiscriminatory reason.  This burden is one of production, not persuasion; it can involve no credibility assessment.'"  *Cervantez*, 2009 WL 2957297 at *8–9 (citation omitted).  "If the employer is able to meet this burden, 'the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination *vel non*.'"  *Id*. (citation omitted).

> [T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L. Ed. 2d 105 (2000)).

"'The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiffs'] termination.'"  *Id*. (citation omitted).  "Courts 'do not try . . . the validity of good faith beliefs as to an employee's competence.  Motive is the issue.'"  *Id*. (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

> [Yet,] [e]vidence demonstrating the falsity of the defendant's explanation . . . is likely to support an inference of discrimination even without further evidence of defendant's true motive.  Thus, the plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation.

-10-

*Id*. (citations omitted).

Here, Defendant argues that Plaintiffs cannot show a prima facie case of age discrimination. Though Defendant concedes that Plaintiffs have established the first and third elements of their prima facie case, the parties disagree, however, with respect to the remaining two elements.  First, the Defendant argues that Plaintiffs were not qualified for their positions as OTR drivers due to their lack of compliance with DOT HOS Regulations.  However, Plaintiffs can establish this element of their prima facie case simply by "showing that [they] continued to possess the necessary qualifications for [their] job[s] at the time of the adverse action." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988).  Further, because Plaintiffs' qualifications and ability to follow DOT HOS Regulations is an issue in the pretext stage of this termination case, it is an "unnecessary redundancy" to place Plaintiffs' qualifications at issue in the prima facie stage. *Id.*  Here, Plaintiffs have offered competent summary judgment evidence that, at the very least, poses a genuine issue of material fact with respect to their qualifications as OTR drivers.  Plaintiffs have pointed to evidence showing that they were trained and qualified as OTR drivers at the time of their hire and at the time of their termination. Pls.'s Resp. 18.

Second, Defendant argues that Plaintiffs were not replaced by anyone outside the protected class or significantly younger than Plaintiffs. *See* Def.'s Mot. for Summ. J. 22–23.  "A prima facie case of age discrimination can be constructed where the plaintiff was replaced by a younger worker even if the younger worker is himself within the protected class." *Bienkowski*, 851 F.2d at 1506. However, the replacement must be "significantly younger in the context of his employment to permit an inference of age discrimination." *Id*.  The Fifth Circuit has stated that a five-year age difference is a "close question," and courts have denied summary judgment where there is a seven-year age

difference. *See id.* at 1506; *Bell v. Raytheon Co.*, 2009 WL 2365454, *6 (N.D. Tex. July 31, 2009).

Here, the replacements' ages range from older than one Plaintiff to approximately 19 years younger

than another Plaintiff.   Due the factual disputes regarding which individuals were in fact

replacements for Plaintiffs and due to the large age variance in the replacements, the court finds that

there is a genuine issue of material fact with respect to the fourth element of a prima facie case of

discrimination. *See Bienkowski*, 851 F.2d at 1506; *Bell*, 2009 WL 2365454 at *6.   Accordingly, in

viewing the summary judgment evidence in the light most favorable to the Plaintiffs, the court finds

that for summary judgment purposes the Plaintiffs have set forth a prima facie case under the

*McDonnell Douglas* framework. *See Cervantez*, 2009 WL 2957297 at *8–9.

The court now turns to Defendant's proffered reason for termination.   The Defendant asserts

that it terminated Plaintiffs for falsifying drivers' logs, in violation of DOT HOS Regulations and

in violation of company policy.   Def.'s Mot. for Summ. J. 18–19.   Because this is a legitimate,

nondiscriminatory reason for termination, the *McDonell Douglas* burden-shifting framework

disappears, and the court must inquire whether the Plaintiffs have shown the existence of a genuine

issue of material fact on age discrimination.  *See Cervantez*, 2009 WL 2957297 at *8–9.

The Plaintiffs have provided the court with competent summary judgment evidence that

raises a genuine issue of material fact regarding the Defendant's proffered reason for termination,

and that the reason was unworthy of credence.   The evidence also raises a genuine issue of material

fact with respect to the falsity of the Defendant's explanation for the Plaintiffs' terminations which,

in turn, supports an inference of discrimination.   The parties have presented evidence of differing

versions of what was said by the supervisors to the Plaintiffs regarding logging their hours.

Therefore, Plaintiffs have produced competent summary judgment evidence that "creates a jury issue

as to the [Defendant's] discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Id*.

## V.  CONCLUSION

Based on the foregoing, the court finds that the Defendant's motion for summary judgment and brief in support thereof (Dkt. #30) is hereby **DENIED**.  Further, the court **GRANTS** Plaintiffs' motion for extension (Dkt. #60); **DENIES** Defendant's motion to strike Plaintiffs' untimely summary judgment response (Dkt. #71); and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to strike Plaintiffs' summary judgment evidence (Dkt. #73).

IT IS SO ORDERED.

**SIGNED this the 28th day of June, 2012.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE